UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | |
|---|---|
| WARD A. PHELAN<br><br>Plaintiff,<br><br>v.<br><br>ZWICKER & ASSOCIATES, P.C.<br><br>Defendants. | CIVIL COMPLAINT<br><br>CASE NO. 7:19-cv-00132<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

**NOW COMES** WARD A. PHELAN ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining of ZWICKER & ASSOCIATES, P.C. ("Zwicker") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action against Zwicker seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227 and violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692.

2. All of the claims stated herein stem from debt collection activities, primarily in the form robocalls, related to credit card debt.

3. The number of Americans that have complained about harassing robocalls has dramatically increased in recent years.

4. According to recent testimony by Federal Trade Commission ("FTC") officials before US House and Energy Commerce Subcommittee, in the fiscal year 2017 alone, more than 4.5 million people complained to the FTC about illegal robocalls. *See* https://www.ftc.gov/news-events/press-

releases/2018/07/ftc-testifies-house-energy-commerce-subcommittee-about-agencys (last visited, July 26, 2018).

5. In 2017, American consumers and businesses received 30.5 billion robocalls surpassing the prior national record of 29.3 billion robocalls set in 2016. *See* https://www.prnewswire.com/news-releases/robocall-epidemic-breaks-annual-record-with-305-billion-calls-in-2017-300580916.html (last visited July 26, 2018).

6. The TCPA was enacted to prevent companies like Zwicker from invading peoples' privacy and to prevent illegal robocalls.

7. The FDCPA was enacted to prevent companies like Zwicker from debt collector harassment.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is conferred upon this Court by 12 U.S.C. § 2605, Title 11 of U.S.C., and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Zwicker conduct business in the Southern District of Texas and a substantial portion of the events or omissions giving rise to the claims occurred within the Southern District of Texas.

## PARTIES

9. Plaintiff is a natural person, seventy-five (75) years of age, who at all times relevant, resided in the Mission, Texas.

10. Zwicker is a law firm with its principal place of business located at 80 Minuteman Road, Andover, Massachusetts 01810. Zwicker's primarily engaged in the business of collecting, or attempting to collect, consumer debt, owed, or asserted to be owed, to others, using the mail and telephone, including in the State of Texas.

**FACTS SUPPORTING CAUSE OF ACTION**

11. Plaintiff is a retired man whose primary source of income is social security benefits.

12. In 2016, Plaintiff applied for and received American Express credit card.

13. The terms of the agreement with American Express ("Amex") provided that Plaintiff would not be charged interest until March, 2018. Plaintiff subsequently transferred his existing credit card debt to his new Amex card ("subject debt").

14. Shortly thereafter, despite the zero-interest-deal, Amex began unlawfully charging Plaintiff interest.

15. Plaintiff called and wrote to Amex to try to resolve the issue to no avail. Frustrated with Amex's inaction, Plaintiff advised Amex that he will no longer make payments to it until it decided to live up to its obligations under the agreement.

16. In early 2018, the subject debt was transferred to Zwicker for collection.

17. At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of a cellular telephone with the assigned number ending in **4774**. Plaintiff is and has always been financially responsible for this cellular phone and its services.

18. In or about January, 2018, Plaintiff began receiving calls from Zwicker to his cellular phone.

19. In one phone conversation, Plaintiff tried to explain what had transpired with Amex but the Zwicker representative did not care to listen or understand Plaintiff's situation.

20. As the phone calls continued, in or about February, 2018, Plaintiff asked Zwicker representatives not to call him again, that he will not answer any more of their calls, and that he will block their calls.

21. Despite Plaintiff's request that the calls stop, Zwicker continued to call Plaintiff on his cellular phone.

22. On one occasion, after Plaintiff again told a Zwicker representative that he did not want to be contacted any further, the Zwicker representative told Plaintiff that he will continue to get calls until he pays.

23. On another occasion, Plaintiff advised the Zwicker representative that he was in the car with his grandson. The Zwicker representative responded that he didn't care and will continue to keep calling to collect.

24. On multiple occasions, Zwicker would leave prerecorded messages on Plaintiff's cellular phone voicemail.

25. Plaintiff approximates that he received no less than 100 calls to his cellular phone after the first time he asked Zwicker to stop calling.

26. Plaintiff also approximates that he orally asked Zwicker over the phone to stop calling on at least five different occasions, but Plaintiff also sent Zwicker written demands to cease calling him.

27. The phone calls from Zwicker came from phone numbers 512-218-0477, 512-218-0488, 877-255-7323, 877-594-7323, 877-255-7341, as well as others.

28. In the calls that Plaintiff answered, Plaintiff was greeted by a noticeable period of "dead air" while Zwicker's telephone system attempted to connect the Plaintiff to a representative.

29. Upon information and belief, Zwicker recorded most, if not all, of the calls made to Plaintiff.

30. On April 23, 2018, Amex, through it attorneys, Zwicker, filed a debt collection lawsuit against Plaintiff in state court in Texas ("Debt Collection Action"). The case is styled as *American*

*Express National Bank v. Ward Phelan aka Ward A. Phelan,* JP Court P5.1, Cameron County, Texas, Case No. 2018-KDC-00343.

31. Plaintiff represents himself in the debt collection action.

32. On July 16, 2018, Amex, through Zwicker, filed a Motion for Summary Disposition in the debt collection action.

33. In late December, 2018, Plaintiff received a letter in the mail from Amex. The letter advised Plaintiff that he was being issued a refund for his Amex account and that "[b]ecause of a technical error, we incorrectly charged interest on your account during a period where promotional offer rated should have been applied. We apologize for this error and for any confusion it may have caused."

34. On January 15, 2019, the Texas State Court denied Amex's Motion for Summary Disposition in the debt collection action.

35. Upon information and belief, Zwicker has no system in place to document and archive when consumers revoke consent to be contacted on their cellular phones.

36. Upon information and belief, Zwicker knew its collection tactics were in violation of the TCPA and FDCPA, yet still continued to use them despite receiving multiple oral and written requests to the contrary.

37. Concerned about the violations of his rights and invasion of his privacy, Plaintiff sought the assistance of counsel to stop Zwicker's unlawful collection tactics.

38. Plaintiff has suffered and continues to suffer emotional distress as a direct result of the unlawful collection practices of Zwicker.

39. Zwicker's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

40. Zwicker's unlawful debt collection activities have caused Plaintiff actual harm, including but not limited to invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, increased usage of his telephone services, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

41. Zwicker's unlawful debt collection activities have caused Plaintiff monetary loss in the form of certified mailings and other types of postage.

**COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

42. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Zwicker placed or caused to be placed many non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") *and* by using a prerecorded voice in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

44. The TCPA prohibits calling persons on their cell phone using an automatic telephone dialing system ("ATDS") without their consent. 47 U.S.C. §227(b)(1)(iii). The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

45. Based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, Zwicker used a predictive dialing system to place calls to Plaintiff.

46. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

47. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

48. Upon information and belief, the predictive dialing system employed by Zwicker transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

49. Zwicker, through its agents, representatives, and/or employees acting, within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

50. Zwicker violated the TCPA by placing at least 100 calls to Plaintiff's cellular phone using an ATDS without his express consent. Prior consent, if any, was revoked at least five times.

51. Zwicker violated the TCPA by leaving prerecorded messages on Plaintiff's cell phone voicemail.

52. As pled above, Plaintiff was harmed by Zwicker's collection calls to his cellular phone.

53. Pursuant to 47 U.S.C. §227(b)(3)(B), Zwicker is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Zwicker's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff WARD A. PHELAN requests that this Honorable Court:

a. Declare Zwicker's phone calls to Plaintiff to be a violation of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);
c. Award Plaintiff reasonable attorney fees and costs; and
d. Award any other relief this Honorable Court deems equitable and just.

**COUNT II – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

54. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

55. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

56. The subject loan qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of credit card debt used for household items and/or services.

57. Zwicker qualifies as a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

58. Zwicker violated 15 U.S.C. §§1692d, d(5), f, and f(1) through its collection efforts on the subject debt.

**a. Violation of FDCPA §1692d and §1692d(5)**

59. Zwicker engaged in abusive and oppressive conduct in violation of §1692d by relentlessly calling Plaintiff to collect on the subject debt, especially after the numerous times he asked for the calls to stop.

60. Zwicker violated §1692d(5) by causing Plaintiff's cellular phone to ring numerous times and repeatedly engaging him in conversations about the subject debt.

**b. Violation of FDCPA §1692f**

61. Zwicker violated §1692f by using unfair and unconscionable means to collect on the subject debt when it made at least one hundred calls to Plaintiff.

62. Zwicker violated §1692f(1) by illegally attempting to collect the subject debt by placing the numerous harassing phone calls to Plaintiff, especially after Plaintiff requested that the calls stop on multiple occasions.

63. As an experienced debt collector, Zwicker knew or should have known the ramifications of calling Plantiff's cellular phone to collect on the subject debt after it was told on numerous occasions to stop doing so.

64. Zwicker knew or should have known to stop harassing Plaintiff.

65. Upon information and belief, Zwicker systematically attempts to collect debts by calling consumers after they have requested the calls to stop.

WHEREFORE, Plaintiff PHELAN A. WARD requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

Plaintiff demands trial by jury.

Dated: April 19, 2019                                     Respectfully Submitted,

**/s/ Majdi Y. Hijazin**

Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Suite 200
Lombard, Illinois 60148
Phone (630)575-8181
Fax: (630)575-8188
mhijazin@hijazinlaw.com